Good morning Your Honors. My name is Ji-Hsien Lian and I represent the petitioner. In this case, the immigration judge found the petitioner to be a credible witness and she found that the petitioner has a subjective fear of future prosecution based upon the birth of three U.S. citizen children and the only issue in dispute is whether or not her fear of forced sterilization for being a single mother of three children is objectively reasonable. According to the IG, there is no objective evidence in record to support the petitioner's fear of forced sterilization upon her return to China, and we disagree. The State Department's record shows that the standard practice in Guangdong province, that's where the petitioner is from, to be for couples with two children to undergo a vasectomy or tubal ligation. Therefore, the only question remaining is whether or not the petitioner would be exempt from the standard practice for being a mother of three U.S. citizen children. According to the Department's advisory opinion, the key to answer this question is to see whether or not the petitioner is in a position of permanent resident status. This... Well, let me ask you something. They also said that in many instances, there would be at most a modest fine. Would that be persecution if there were a modest fine? Well, if it's only a modest fine, that would not constitute persecution. What if it was a not modest fine? What if it was a fine, as some of these seem to be, of three and a half years' salary, all stretched out over time? Is there any case law about when fines are sufficient coercion? I think that's Kovach, K-O-V-A-C. That's an old case. In that case, there's a disproportional imposition of financial disadvantage would constitute... Are any of the Chinese cases cases in which there were... which found persecution cases in which there were just fines? No, no, not that I'm aware of. Go ahead. So the record shows that whether or not a petitioner is in position of a permanent resident, a U.S. resident status, is the key criterion for determining whether or not she would be subject to the same family planning restrictions. Since obviously petitioner is not a U.S. permanent resident, so she would be subject to the same, very same standard practice in her home province. Mr. Li, as I understood the record, I thought the I.J. read the country reports to be just the opposite of what you're arguing, that the I.J. did not find that the country reports established the pattern or practice of persecution. So you have to convince us that substantial evidence compels the contrary conclusion, do you not? But I.J., what I.J. says, there's no objective evidence in record whatsoever to support... Well, and then that leads to my second question, which is in our in-bank opinion, in Lo Long, we seem to have given more credence to the I.J. in looking for evidence of objective persecution. In this case, she has very little, if any. She really does have to fit within some kind of a group here that's been specifically targeted. So you have kind of two hurdles that we provide to overcome, both of which are... In this case, Your Honor, if you look at the I.J. specifically found the petitioner to be credible. Right. There's no question that she has a subjective fear, but we're now on the objective. And the concerns I have, maybe I'm not making my concerns clear, but my first concern is that the I.J. looked at the country reports and said there is not a pattern or practice of discrimination against returning people on any reported cases of discrimination or persecution against them who come back with more children. And then secondly, you've got the impact of the Lo Long decision that suggests that she has to show evidence that would lead the back finder to conclude that she has an objective fear of being specifically targeted. In this case, Your Honor, look at the... You understand my question? Yes, Your Honor. Look at her family history and she has a neighbor who was forcibly sterilized. She has two brothers and sisters-in-law who have been forcibly sterilized. So that credible testimony would give petitioner a ground to fear that she would be facing the same fate. In terms of Lo Long, do you understand, I surmised from this testimony, although it's not 100 percent clear, that all of these people were in the same home village. Is that what you understand the record to show? That the neighbor certainly wasn't in her home village and the brother, at least one of the brothers, seemed to be as well. I couldn't quite tell about the other brother. Is that your understanding of the record? Yes, that's my understanding, Your Honor. So essentially what we have is a subarea, i.e., her home village, in which this is going on quite often, whatever may be the case elsewhere. That's correct. And I think the central theme in the country report is that the enforcement of birth control policies vary from time to time and vary from place to place. So we have to look at the place where petitioner resided. Okay, so then the next question is, if we assume that, if we assume that there's at least, she's at least overcome the general country report about the infrequency of forced sterilizations, but what about the application to people who have children outside the country? She didn't put on any evidence about that. But that's in record, Your Honor, as I just said, that the standard practice in her home province is that you must undergo sterilization. Where is it? That's page 185, Guangdong Province. It says, according to the U.S. Consulate General in Guangzhou, it is a standard practice throughout the province for couples that have had two children to undergo a vasectomy or tubal ligation. But it's not specifically addressing the question of children born abroad. Oh, yeah. And then we just tied the pieces together on page 191. It says, okay, a senior family planner told U.S. officials in 1995 that position or lack of position of a U.S. permanent resident status is the key criterion for determining whether couples are subject to family planning restrictions. So in our case, the petitioner is not a green card holder, so she would be subject to the same standard practice as other parents with children born in China. Mr. Li, can you help me? You cited us to page 191 of the record. The paragraph that begins conversations in Fujian provinces, and then it goes on talking about some couples that have children in the United States beyond the nominal limits and then return to China are at worst given modest fines. Is that inapplicable to her province? Just as I mentioned earlier to the court, the enforcement of birth control policy in China varies from place to place. And just from the fact that the petitioner testified to all the repeated forced sterilization to her family members, so we can make an inference that the enforcement of birth control policy is very extremely restrictive or harsh in her village. Even though it's within the provinces that are referenced in this particular citation. The particular citation does not make any reference to petitioner's home province. It does not. You have to forgive my ignorance of Chinese geography. That's what I was really asking. But the 185 that's just now cited to the court talks about specifically Guangdong province. Which country reports are in the record? Is the 2004 one in the record of this case? I couldn't quite tell that. It seemed like the government introduced the ones from the late 90s, and then the IJ referred to the one from 2004. But was that introduced into the record? I believe so, Your Honor. Well, there seems to be a number on it. Yeah, this is just a standard practice for the. 2004 or 2003? 2004. It's a 2003 report released in 2004. But the country report does not talk about what happened to returning Chinese citizens. So it's the 1998 one. Yeah, so the only thing we have is a 1998 country profile. The IJ made a reference to her age and to the fact that her husband was unlikely to go with her. Is that of any pertinence? Yes, Your Honor. Respondent made some reference to her husband, the father of the children. She was saying that the father of children was a Falun Gong practitioner, and so therefore the father would have a fear of going back to China. So she would be the only one who would return to China, presumably with three children. So that would certainly make her a target for sterilization, for being a mother of three children. Even if she was what? How old is she now, in her mid-40s? She was 41 at the time, was she not? Let me see here. Her daughter. She's 40. She would be 43 years old by now, Your Honor. She's 43 now? Yeah. Yes. But still, she's in the childbearing age. Okay, well you're over your time. Thank you again for your arguments. They were all very helpful. And we will hear from the government. Ms. Drucker, is there anybody manning the office back in China? You might well ask. Oh, we've got so many people now. There's plenty still back there, no matter how many they send out to the courts. Growing all the time. Well, Your Honors, I think in this case, first of all, in some sense we're putting a little bit of the cart before the horse. The IJ in this case denied relief on three separate bases, each of which would be independently sufficient to support affirmance. I'm referring to reasons that are set forth at 51 to 52 of the administrative record. First, the IJ noted correctly that Petitioner's only claim when she was testifying was what would happen if she had additional children in China. But that was speculative, whether she would have additional children if she went back to China. By the way, her counsel is correct about her age. Secondly, Petitioner did not- Sorry, why- just a minute. Where is that? That seems strange. I mean, why would it have to be if she had additional children when she went to China, as opposed to the fact that she already had three children? Okay, this is what she said. This is at page 104 of the administrative record. She says, if I were to go back to China, maybe I will have more children. So in that case, there will be big problem. This idea that that was the crux of her complaint, was also what her attorney thought in his closing argument on page 108. And it's how the IJ understood what her allegations were. So not the fact that she was an unmarried mother, not the fact that she already had three children, only what would happen if she returned to China and had additional children. Just before that, she says, first, they are going to charge me for illegal, not married with children. Then she says, what might happen to me? Then she says, maybe I will have more children. So she said both. Well, the immigration judge was certainly allowed to make inferences based on the testimony that she gave, which certainly supports, I think, what I'm saying here. So you're trying to parse the argument into saying that she really wasn't concerned about the fact that she had already had three children and what would happen? That is one of the bases for the IJ's decision. And is that because the IJ said there's no showing here that the children would actually accompany her back? No, no. That's going to a second point. This is just the question of whether she would have additional children beyond the three she already had in China. Now, the second point is... But the IJ did credit her subjective fear based upon the fact that she'd already had three, did she not? She credited her fear. I don't think there's... I don't recall anything in the IJ's decision that would box it in to the... as you put it, the way you just articulated it. So you're objecting to the form of my question? Overruled. That's all right. You guys hold all the cards. I know that. Go ahead. The second point that the IJ made was that the petitioner had not established that the Chinese government would even know she already had three children. Now, this involves the question of her husband. Let's see. Okay. Again, as we've said before, she has the burden of proof. She did not testify that her children would return to China with her. The immigration judge pointed out in her decision that the father of the three children, the common-law husband of the petitioner, was in Saipan. That's at page 99 of the record. And the children had American passports. They're at 286 and 292 of the record. And so the children would be free to go to the father and stay with him. And admittedly, the IJ didn't mention this, but actually, if you look at the record, the petitioner also testified that her third brother and wife were living, quote, here, unquote, presumably meaning Guam. That's where here was when she was speaking. And her second brother was in Saipan. That's at pages 103 and 104 of the record. So there certainly were other people that the children could be with, and it wasn't at all clear that they would inevitably go back to China with her. Far from it. She had the burden to establish that point, and she did not do so. Only once we get past those two points do we get to the question of whether there's substantial evidence in the record, as we believe there is, that for her in China, if she had additional children and they knew of her previous children and so forth, whether that would result in anything more than social compensation fees, i.e. fines, which, as Petitioner's Counsel just told Judge Berzin, under case law, would not constitute persecution. Now, it's true, there are three sets of Department of State reports in this record. One's from 1995, one's from 1998, and one's from 2004. And as you might imagine, they're not all totally, completely consistent with each other. Well, that was the basis of my question to Mr. Lee. I mean, obviously the IJ drew some conclusions based on reading all this. Right. He wants us to read different parts of the reports and come to the opposite. Is this a legal determination or a factual determination? Well, it seems to me that it's clear that under substantial evidence, even if there's contradictory testimony in the record, as long as there is evidence that supports the IJ's determination that that's sufficient, even if there are other things going the other way. And certainly there are things that the IJ referred to in the decision. This is, I believe, page 50 of the administrative record. The IJ quoted the most recent, which you would think would be the most important of reports, the 2004, quote, central government policy formally prohibits the use of physical coercion to compel persons to submit to abortion or sterilization. The IJ also mentioned in discussing the 1998 report, this is the same place in the administrative record, that there was information from the U.S. Consulate General in Guangzhou, which stated that, quote, sterilization is not forced per se, unquote. Now, I know that Petitioner's Consul quoted something from, I forget which of the reports, it's hard to keep track, which is which, from the 1998 report, page 185, about the standard practice in Guangzhou. But why does this matter? It seems to me the case divides into two pieces. With regard to whether there is forced sterilization in her home village, she puts specific evidence in of three instances, or maybe four, in which that occurred. And that seems to me, if she's credited, I understand she was credited, to overcome the more general statements in the report. The reports certainly indicate that this happens sometimes, occasionally at least, and she has specific evidence that it happens in her home village. That's one thing. Then there's the question of how that applies to people who have children outside the country. But why on the first issue has she not met her burden of proof? I mean, more than met her burden of proof. How could all of that be totally ignored? I.J. did not even deal with that in his opinion. He just ignored it. Okay. I think one of the reasons is the time frames. I have two-part answer to that. Okay. One is the time frames. Now, if you read her testimony, this is pages 100 to 104 of the record, the incidents took place in 1992, 1993, 1996, and 2001. So all of these were well before the most recent Department of State report, which was 2004. That's one thing. And a number of them were close to ten years before. I mean, things are changing in this situation. We have a, you know, developing policy here where, in fact, there's many reasons reading all these reports together to think, you know, they're loosening up. They're trying not to have the central government doesn't want people to be forcibly sterilized. So you have to take that into consideration. Another question is, again, if you look at the specific testimony that she gave, this word force is thrown around quite a bit. But what exactly does that mean? She doesn't really flesh out what happened with these people. Now, you know, a businessman could come in and be describing to someone else about a deal that he's structuring and say, well, you know, the tax code really forces me to do this a certain way. But they don't mean it's like a mafia person holding a gun to their head. They just mean that there are things. She said they were put up by the family planning policy, and their house was shoot up sometime. I mean, she was pretty specific about what she was talking about. She was talking about force. Well, some of them, some, that may be true about one incident, but generally she just uses this, you know, term they were forced, or even trying to force, where it's not even clear, it's even less clear, let's put it that way. You know, somebody was trying to exert some pressure. What happened isn't totally clear. They chased people. They sealed their houses. Well, again, you know. It seems to me you're arguing this case in the wrong place. The larger problem is what about the people who were not in the country when they had the children? That seems to be an evidentiary vacuum. Well, I don't, are you suggesting that they would treat people in that category more harshly? That's the question. No, worse. I know, better. I mean, there are some, we don't know how they're treating them. That's the question. Well, what I'm suggesting is they wouldn't treat them any worse than the people who are there. That's probably so. So I think my arguments stand and would carry the case here. If there are no more questions, I'll rest. The case of Zhao versus Gonzales is submitted. Why don't we hear one more case and take a break after that? So we will hear Mark H. versus. Okay. Okay.
judges: Thompson, Berzon, Tallman